## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MICHAEL D. JACKSON,**

      **Petitioner,**

                                   **Civ. No. 2:15-cv-1122**
  **v.**                               **Crim. No. 2:09-cr-00021(1)**
                                            **Judge Gregory L. Frost**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### OPINION AND ORDER

Petitioner, a federal prisoner, brings this action to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the *Motion to Vacate under 28 U.S.C. 2255* (ECF No. 115), Respondent's *Response in Opposition* (ECF No. 122), Petitioner's *Reply to Response to Motion to Vacate under 28 U.S.C. 2255* (ECF No. 124), and the exhibits of the parties. For the reasons that follow, the *Motion to Vacate under 28 U.S.C. 2255* (ECF No. 115) is **DISMISSED.**

Petitioner's request for an evidentiary hearing is **DENIED**.

### Procedural History

On June 26, 2009, Petitioner was convicted on his plea of guilty, entered pursuant to the *Plea Agreement* (ECF No. 52), to possessing with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. §§841(a)(1), (b)(1)(B).

> The presentencing report provided a sentencing range of 188–235 months due to Jackson's status as a career offender. The district court agreed to delay Jackson's sentencing in anticipation that Congress would pass legislation reducing the penalties associated with the crack cocaine laws. . . .

After waiting more than a year after Jackson entered his guilty plea in June 2009, the district court decided it could wait no longer and sentenced Jackson on July 16, 2010:

> [W]e waited and waited and waited to see if Congress would change the guidelines, or the statutes, with regard to crack versus powder cocaine. My information now indicates that it's a dead issue in Congress and that it's not going to change, at least in the foreseeable future. . . .  I was trying to give you the benefit of any change in the law that might occur, and it doesn't appear that it's going to. For that, I'm sorry. . . .

*Sentencing Tr*. at 16 [(ECF No. 84, PageID# 263)]. The district court did not apply the "career offender" guideline sentence and sentenced Jackson to 150 months. This sentence was below the advisory guideline range for a career offender and within the old advisory guideline range for crack cocaine violations that would have otherwise applied to Jackson if he were not a career offender. Jackson filed a timely notice of appeal on July 26, 2010. On August 3, 2010, less than three weeks after Jackson was sentenced, the Fair Sentencing Act was signed into law and the ratio for crack versus powder cocaine was reduced from 100:1 to 18:1.FN1 The Sentencing Commission promulgated emergency amendments to the sentencing guidelines, which became effective immediately, and other amendments were later promulgated that made the reduced guideline ranges for crack cocaine permanent and retroactive on November 1, 2011. *See*  U.S.S.G.App. C–Vol. III, Amend. 750 (effective Nov. 1, 2011) and Amend. 759 (making Amend. 750 retroactive effective Nov. 1, 2011).

> FN1:  The Fair Sentencing Act, enacted on August 3, 2010, increased the amount of crack cocaine necessary to trigger mandatory minimum sentences. Section 8 of the Fair Sentencing Act directs the United States Sentencing Commission to:
>
>> (1) promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the enactment of this Act, in accordance with the procedure set forth in section 21(a) of the Sentencing Act of 1987 (28 U.S.C. § 994 note), as though the authority under that act had not expired; and (2) pursuant to the emergency authority

> provided under paragraph (1), make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law.

> 124 Stat. 2372, 2374 (2010).

> In accordance with the above directive, the Sentencing Commission issued an emergency amendment to the United States Sentencing Guidelines, effective November 1, 2010, that amended § 2D1.1(c)'s drug quantity table and reduced the base offense level for various quantities of crack cocaine. Temporary Emergency Amendment to Sentencing Guidelines, 75 Fed.Reg. 66, 188 (Oct. 27, 2010). After Jackson filed this appeal, the United States Sentencing Commission unanimously voted to make this amendment, now designated Amendment 750 in Appendix C of the United States Sentencing Guidelines, retroactive. U.S.S.G.App. C, Amend. 759. The effective date of Amendments 750 and 759 is November 1, 2011.

*United States v. Jackson*, 678 F.3d 442, 443-44 (6th Cir. 2012). On May 8, 2012, the United States Court of Appeals for the Sixth Circuit remanded the case to this Court for re-sentencing "to give the district court the opportunity to revisit the sentence in light of the newly retroactive guidelines." *Id.* at 444. In doing so, the Sixth Circuit stated:

> Section 1B1.10 of the Sentencing Guidelines does not mandate that Amendment 750 be applied retroactively, but it gives the sentencing court the discretion to apply it. Because the issue was raised on direct appeal and Amendment 750 was made retroactive during the pendency of the appeal, we remand the case to the district court to allow it in the first instance to consider whether, in the exercise of its discretion, the revised and retroactive crack cocaine guidelines should be considered in determining Jackson's sentence. *See United States v. Coohey*, 11 F.3d 97, 101 (8th Cir.1993).FN2 For purposes of judicial efficiency, we affirm but remand to the district court for the opportunity to consider the retroactive crack cocaine guidelines *sua sponte* without the necessity of Jackson filing a motion pursuant to 18 U.S.C. § 3582(c). We take no position as to whether any change in Jackson's sentence is warranted due to the retroactive crack cocaine guidelines.

> FN2:  Ordinarily, a defendant must petition the district court for modification of sentence under Section 1B1.10. *See* 18 U.S.C. § 3582(c)(2). However, because Jackson raised this sentencing issue on appeal and the amendments were made retroactive during the pendency of his direct appeal, we see no need to force him to take this additional step. *See United States v. Wales*, 977 F.2d 1323, 1328 n. 3 (9th Cir.1992).

*Id*. at 445-46.  At the re-sentencing hearing held on September 13, 2012, this Court reduced Petitioner's sentence to a term of 126 months' imprisonment.  *Judgment* (ECF No. 96.)  On May 5, 2014, however, the Sixth Circuit vacated that sentence and again remanded the case, this time directing this Court to reinstate the original sentence of 150 months' imprisonment.  *United States of America v. Jackson*, 751 F.3d 707 (6th Cir. 2014), rehearing *en banc* denied June 11, 2014)("*Jackson II*").  On October 6, 2014, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari.  Jackson v. United States*, 135 S.Ct. 273 (2014)(Mem.).

This Court re-imposed a prison term of 150 months' imprisonment on November 3, 2014. *Amended Judgment* (ECF No. 113).  Petitioner filed the motion to vacate on March 30, 2015.

Petitioner alleges that he was denied the effective assistance of counsel because his attorney failed to request a continuance of the sentencing hearing until after the passage of the Fair Sentencing Act (claim one); and that his two state court drug convictions do not qualify, under *Descamps v. United States*, -- U.S. --, 133 S.Ct. 2276 (2013), as predicate offenses for his designation as a career offender (claim two).  Respondent contends that Petitioner's claims are procedurally defaulted or without merit.

## Standard of Review

To obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d

627, 630 (6th Cir.1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States, when the trial court lacked jurisdiction, or then the sentence exceeds the maximum sentence allowed by law or is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,' " *Davis v. United States,* 417 U.S. 333, 346 (1974)(quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process. Mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

It is well-established that a motion to vacate under § 2255 "is not a substitute for a direct appeal." *Ray v. United States,* 721 F.3d 758, 761 (6th Cir. 2013); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion to vacate unless the petitioner shows: (1) cause and actual prejudice sufficient to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime. *Ray,* 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted)).

**Claim One**

In his first claim, Petitioner alleges that he was denied the effective assistance of counsel, because his attorney failed to request a continuance of his July 16, 2010, sentencing hearing.

Petitioner argues that his attorney should have known that Congress had scheduled the Fair Sentencing Act for a vote on July 28, 2010. *Reply* (ECF No. 124, PageID# 493-94.) Had counsel secured a continuance of the original sentencing hearing, Petitioner contends, he would have obtained a reduced sentence upon passage of the Fair Sentencing Act.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable outcome. *Id.*

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Therefore, a petitioner must establish prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 692.

In order to establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of *Strickland* to demonstrate ineffective

assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

As noted *supra*, this Court granted an earlier request by defense counsel for a continuance of sentencing, *see Motion* (ECF No. 72); *Order* (ECF No. 73), and delayed Petitioner's original sentencing in anticipation of the passage of the Fair Sentencing Act. *See also Sentencing Tr*. (ECF No. 84, PageID# 263). There is no reason to believe that another request by counsel to further delay the sentencing hearing would have been granted. *See id.* ("[W]e waited and waited and waited to see if Congress would change the guidelines, or the statutes, with regard to crack versus powder cocaine. My information now indicates that it's a dead issue in Congress and that it's not going to change, at least in the foreseeable future. . . ."). *See also United States v. McMahon*, 422 Fed.Appx. 523, 525 (6th Cir. 2011)(A judge need not await the outcome of an ongoing political discussion, and did not abuse its discretion in refusing to grant a continuance of sentencing "even when 'presented with compelling arguments that the political climate was shifting towards eliminating the unwarranted crack/powder 100:1 ratio.'"). Further, the record does not establish that defense counsel could have predicted the passage of the Fair Sentencing Act, or that he acted unreasonably in failing to do so.

In any event, it does not appear that Petitioner would have secured a lower sentence, even after the passage of the Fair Sentencing Act, because of his status as a career offender. In reversing the District Court's reduction of Petitioner's sentence to 126 months imprisonment, the Sixth Circuit reasoned as follows:

A. Original Sentencing

In June 2009, Michael Jackson pleaded guilty to possessing, with the intent to distribute, more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). At that time, this offense carried a maximum penalty of 40 years of imprisonment. *See* §

841(b)(1)(B) (2006). Because Jackson had two prior felony controlled-substance convictions, he qualified as a career offender under U.S.S.G. § 4B1.1(a). The district court determined that Jackson's total offense level was 29. But when "the offense level for a career offender from [the career-offender table] is greater than the offense level otherwise applicable, the [career-offender] offense level . . . shall apply." § 4B1.1(b). Under the career-offender table, Jackson's statutory maximum of 40 years corresponded to an offense level of 34.

Because Jackson's "offense level for a career offender from the table" — *i.e.*, 34 — was greater than "the offense level otherwise applicable" — *i.e.*, 29 — the career-offender offense-level applied. *Ibid.* Jackson's applicable career-offense level, therefore, was 34. His criminal-history category under the table was VI. The career-offender table permits a reduction of up to three levels for acceptance of responsibility under § 3E1.1. *See* § 4B1.1(b). Jackson received this reduction, so his final offense level, under the career-offender table, was 31. An offense level of 31 and a criminal-history category of VI resulted in a § 5A sentencing range of 188 to 235 months for Jackson. Nonetheless, in 2010, the district court, because of the "crack versus powder cocaine disparity issue," exercised its discretion to depart downward from the § 5A range and imposed a sentence of 150 months of imprisonment.

Later that year, Congress passed the Fair Sentencing Act, and the United States Sentencing Commission amended the crack-cocaine guidelines.

B.  Sentence Reduction

Jackson appealed his sentence. In *Jackson I*, a majority of this panel found that Jackson, whose § 5A sentencing range derived solely from the career-offender table, was eligible for a sentence-reduction hearing because of the change to the crack-cocaine guidelines. The court "remand[ed] the case to the district court to allow it in the first instance to consider whether, in the exercise of its discretion, the revised and retroactive crack cocaine guidelines should be considered in determining Jackson's sentence." *United States v. Jackson*, 678 F.3d 442, 445 (6th Cir. 2012) (emphasis added). The court took "no position as to whether any change in Jackson's sentence is warranted due to the retroactive crack cocaine guidelines." *Id*. at 446. *Jackson I* essentially decided that Jackson was eligible for a sentence-reduction hearing.

In September 2012, Jackson received a sentence-reduction hearing. The district court "review[ed] the case all over again . . . using the amended guidelines. . . ." The court noted that, were Jackson not a career offender, his new offense level would be 25 and his new § 5A sentencing range would be 84 to 105 months. But in 2012, as in 2009, Jackson qualified as a career offender under § 4B1.1(a). At the hearing, Jackson's "offense level for a career offender from the table" — i.*e.,* 34 — was still greater "than the offense level otherwise applicable" — *i.e.*, now 25. § 4B1.1(b). Consequently, "the offense level from the [career-offender] table . . . shall apply." *Ibid.* At the hearing, then, the district court correctly concluded that Jackson's career-offender offense-level was 34. The district court then made a three-level reduction under § 3E1.1 — which § 4B1.1(b) permits. Jackson's offense level of 31 and his criminal-history category of VI again resulted in a § 5A sentencing range of 188 to 235 months. As the district court told Jackson, "That [career-offender] sentencing factor hurts you. That hurt you. That is a sentence of 38 months more than I sentenced you to begin with. On the minimum range."

The district court accepted that the decision about whether Jackson was eligible for resentencing under § 3582(c)(2) "has been dictated to me." The district court then concluded that it could not reduce Jackson's sentence below 150 months. It again imposed a sentence of 150 months of imprisonment.

C.  The "Hail Mary Pass"

Jackson's counsel then asked the district court to reconsider its analysis if the Fair Sentencing Act's revised mandatory-minimum penalties applied at the time of Jackson's original sentencing. The court considered this argument to be a "Hail Mary pass." Jackson's counsel stated that his request was not a "legalistic argument" but simply a suggestion that the court consider what Jackson's § 5A sentencing range would have been if Jackson had been sentenced after the Fair Sentencing Act's effective date.

If the Fair Sentencing Act had been effective in 2009, Jackson's maximum sentence would be 20 — not 40 — years of imprisonment. *See* § 841(b)(1)(C) (2012). This would give Jackson a career-offender offense level of 32, under § 4B1.1(b). Jackson would presumably again receive the three-level § 3E1.1 reduction, resulting in a final career-offender offense-level of 29. *See ibid*. Jackson would retain a criminal-history category of VI, which corresponds to a § 5A sentencing range of 151 to 188 months. The district court correctly concluded that, were Jackson to be

sentenced for the first time in 2012, his § 5A range would be 151 to 188 months.

The district court, however, focused on the fact that if Jackson were sentenced for the first time in 2012, his sentencing range would be lower and Jackson would still have the same mitigating factors that caused the court to exercise its discretion to depart downward from the § 5A range at Jackson's initial sentencing. "How can I be illogically logical?" the court asked. It stated: "If Mr. Jackson appeared before me today, he would be at a range of 151 to 188. If Mr. Jackson appeared before me today, he would still have the good things that I have already mentioned going for him. . . ." Under these circumstances, the court contemplated whether it could fairly re-impose a sentence of 150 months. It asked the prosecutor: "How would I explain it to [Jackson] . . . other than you don't think that I have the legal authority to do so[?]" In light of this consideration, the district court reduced Jackson's sentence to 126 months.

This sentence was lower than the bottom end of Jackson's § 5A range — *i.e.*, 188 months — at his original sentencing. It was also lower than the bottom end of Jackson's actual amended § 5A guideline range — *i.e.*, 188 months. And it was also lower than the bottom end of the hypothetical § 5A range that Jackson would be subject to, if he were originally sentenced today under the Fair Sentencing Act's new mandatory-minimum regime — *i.e.,* 151 months.

II

We review a district court's sentence-reduction decision for abuse of discretion. *United States v. Washington*, 584 F.3d 693, 695 (6th Cir.2009) "[A] district court abuses its discretion when it. . . improperly applies the law. . . ." *Ibid.*

III

This court earlier decided that Jackson was eligible for a sentence-reduction hearing. *Jackson I*, 678 F.3d at 445–46. Subsection 1B.10(b)(2) of the Guidelines Manual imposes a hard limit on a court's ability to reduce the sentence for a defendant who has been deemed eligible for a § 3582(c)(2) sentence reduction.FN1 The subsection's title — "Limitation and Prohibition on Extent of Reduction" — reflects this. That provision provides that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less

than the minimum of the amended guideline range." Subsection 1B1.10(b)(2)'s limitation on a district court's sentence-reduction authority is absolute. *Dillon v. United States*, 560 U.S. 817, 130 S.Ct. 2683, 2693, 177 L.Ed.2d 271 (2010).

Here, the district court — after first re-imposing a sentence of 150 months — reversed course and ultimately imposed a sentence of 126 months. Jackson's applicable guideline range was 188 to 235 months at his original sentence, and Jackson's amended guideline range at the time of sentence reduction was 188 to 235 months. Because the district court was prohibited from reducing Jackson's sentence "to a term less than the minimum of the amended guideline range" — i.e., 188 months — Jackson's reduced sentence is improper. We, therefore, vacate Jackson's reduced sentence and remand with instructions to reinstate Jackson's prior sentence of 150 months.

It is true that the guidelines are "now[ ] advisory." *Jackson I*, 678 F.3d at 445. But § 1B1.10(b)(2)'s prohibition is not. The Supreme Court has addressed this exact issue and has declined "to excise the mandatory language of § 1B1.10(b)(2) and treat that provision as advisory." *Dillon*, 130 S.Ct. at 2690 (Sotomayor, J.); *accord* [*United States v.*]*Washington*, 584 F.3d [693,] 701 [(6th Cir. 2009)]. Simply put, the district court is "constrained by the Commission's statements dictating by what amount the sentence of a prisoner serving a term of imprisonment affected by the amendment may be reduced." *Dillon,* 130 S.Ct. at 2691 (internal quotation marks omitted). Subsection 1B1.10(b)(2) "confines the extent of the reduction authorized." *Ibid*. Subsection 1B1.10(b)(2), then, is not advisory.

IV

Because § 1B1.10(b)(2) prohibits a court from "reduc[ing] the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range," and because the district court did just that, we VACATE the district court's sentence and REMAND with instructions to reinstate Jackson's original sentence.

> FN1: There is one exception, not relevant here, to this hard limit. If a defendant initially receives a sentence of imprisonment lower than that provided by the defendant's applicable guideline range pursuant to a government substantial-assistance motion under § 5K1.1, then "a

> reduction comparably less than the amended guideline
> range . . . may be appropriate." § 1B1.10(b)(2)(B).

*Jackson II*, 751 F.3d at 708-12 (footnote omitted). Thus, even applying the amended guidelines applicable to crack cocaine offenses effective after Petitioner's initial sentencing hearing, Petitioner's recommended sentencing range under the advisory United States Sentencing Guidelines remained, because of his status as a career offender, 188-235 months' incarceration, and U.S.S.G. § 1B.10(b)(2) prohibited this Court from further reducing Petitioner's sentence.

Significantly, the Sixth Circuit observed that the Fair Sentencing Act did not have the effect of altering Petitioner's sentence:

> Even assuming Jackson were correct that the Fair Sentencing Act
> applied retroactively or that it were in effect in 2009 at the time of
> Jackson's original sentencing, the outcome of this case would be
> the same. In that circumstance, Jackson's § 5A range would be 151
> to 188 months. And even if Jackson's amended guideline range
> were actually 151 to 188 months, the district court "shall not
> reduce [Jackson's] term of imprisonment. . . to a term that is less
> than the minimum" end of that range — *i.e.,* 151 months. The
> district court's reduction of Jackson's sentence to 126 months
> would still have been improper.

*Id*. at 712 n.2.

Therefore, this Court is not persuaded that Petitioner has established the denial of the effective assistance of counsel under the two-prong *Strickland* test so as to warrant relief on claim one.

## Claim Two

In claim two, Petitioner alleges that he was improperly sentenced as a career offender. Specifically, Petitioner argues that his August 2002 and 2003 convictions in the State of Michigan on attempted delivery/manufacture of cocaine, *see Pre-sentence Investigation Report*, ¶¶56, 57 (ECF No. 70), should not have been used to qualify as predicate offenses for his

12

designation as a career offender under *Descamps,* 133 S.Ct. at 2276, because the term "knowledge" or "knowingly" does not constitute an element of the state criminal conviction, as required under the analogous federal narcotics statute, 21 U.S.C. § 841(a).[1]  Petitioner argues that his designation as a career offender therefore violates 28 U.S.C. § 944(h)(2).[2]  Petitioner contends that the Court should have applied a "modified categorical approach" to determine whether his convictions qualified as predicate convictions for purposes of the career offender classification.  *See Reply.*  Petitioner also refers to *Carachuri-Rosendo v. Holder,* 560 U.S. 563 (2010), and *Moncrieffe v. Holder,* -- U.S. --, 133 S.Ct. 1678 (2013), in support of his claim that his prior convictions do not qualify as predicate offenses for his classification as a career offender.  *See Reply* (ECF No. 124.)

---

[1] 21 U.S.C. § 841(a) provides:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
>
> (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

[2] 28 U.S.C. § 944(h)(2) provides:

> (h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—
>
> ***
>
> (2) has previously been convicted of two or more prior felonies, each of which is—
>
> (A) a crime of violence; or
>
> (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46.

Petitioner has waived this claim for review by failing to raise it on direct appeal. Moreover, Petitioner has failed to establish cause for his procedural default in failing to raise this claim on direct appeal.

Furthermore, and as noted *supra,* errors related to the application of the Sentencing Guidelines are not ordinarily cognizable under § 2255. *Grant,* 72 F.3d at 506. *See also United States v. Meirovitz*, 688 F.3d 369, 372 (8th Cir. 2012).

> To obtain relief under § 2255 for a nonconstitutional error, *i.e.* error in calculating the applicable range under the Sentencing Guidelines based on the career-offender classification in U.S.S.G. § 4B1.1, [the petitioner] must establish either: (1) a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed,* 512 U.S. at 353–54; *Hill,* 368 U.S. at 428; *Jones*, 178 F.3d at 796; *Watson,* 165 F.3d at 488; *Fair*, 157 F.3d at 430; *Grant,* 72 F.3d at 505–06.

*Clark v. United States*, 2012 WL 3991066, at *13 (E.D.Tenn. Sept. 11, 2012). *See also Gibbs v. United States*, 655 F.3d 473, 478-79 (6th Cir. 2011)(actual innocence exception does not permit prisoners to raise claims about guidelines calculations in a collateral attack).   Petitioner has failed to establish that any miscalculation under the Sentencing Guidelines – even assuming that a miscalculation occurred – warrants relief under § 2255.  Even assuming that this claim is properly raised in these proceedings under § 2255, the Court concludes that the claim is without merit.

The record reflects that, in August 2002 and 2003, Petitioner was convicted of the attempted delivery/manufacture of cocaine under M.C.L.A. § 333.7401, which provided at that time in relevant part as follows:

> (1) Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, an official prescription form, or a counterfeit prescription form. A

> practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.
>
> (2) A person who violates this section as to:
>
> (a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv) and:
>
> ***
>
> (iv) Which is in an amount less than 50 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 1 year nor more than 20 years, and may be fined not more than $25,000.00, or placed on probation for life.

*See Pre-sentence Investigation Report* (ECF No. 70, §§ 56, 57)(filed under seal.)  The Supreme Court of Michigan has held that, in order to establish a defendant's guilt under this statute, the prosecution must show that the defendant "knowingly delivered or aided in the delivery of some amount of cocaine," so long as the jury also later determines the quantity of drugs involved. *People v. Mass*, 464 Mich. 615, 628 (2001)(emphasis added).  Thus, and contrary to Petitioner's allegation here, scienter constitutes an element of the offense charged.

Further, neither *Carachuri-Rosendo*, 560 U.S. at 563, nor *Moncrieffe*, 133 S.Ct. at 1678, assist him.  Both *Carachuri-Rosendo* and *Moncrieffe* involved the application of the Immigration and Nationality Act ("INA").

> Under the INA, a non-citizen is deportable if he is convicted of an "aggravated felony." That term is defined under the INA to include "illicit trafficking in a controlled substance" and includes the conviction of an offense that the C[ontrolled] S[ubstances] A[ct] makes punishable as a felony, that is, an offense punishable under federal law by more than one year's imprisonment. *Moncrieffe*, 133 S.Ct. at 1683 (citations omitted). The petitioner in *Moncrieffe* had previously pleaded guilty to a state-law marijuana charge that the Supreme Court found did not qualify as an aggravated felony

> under the INA because the state charge would not have been
> punishable as a felony under federal law.

Neither case applies to the determination of whether Petitioner qualified as a career offender under the provisions of the United States Sentencing Guidelines. *See Pittman v. United States,* No. 3:14-cv-01064, 2014 WL 3735918, at *3 (M.D. Tenn. July 29, 2014); *Ferguson v. United States*, 2014 WL 105022, at *1 (S.D. Ga. Jan. 9, 2014)(*"Moncrieffe* simply does not apply to a "controlled substance offense" under the sentencing guidelines.")(citing *Thomas v. United States*, Nos. 8:13-CV-215-T-15MAP, 8:07-CR-203-T-27MAP, 2013 WL 4855067, at *8 (M.D. Fla. Sept. 11, 2013); *Davis v. United States*, Nos. 8:13-CV-1431-T-30TGW, 8:08-CR-413-T-30TGW, 2013 WL 6670489, at *6 (M.D. Fla. Dec. 18, 2013)); *see also Blackmon v. United States*, No. 13 Civ. 6797(JSR)(KNF), 2014 WL 2751036, at *5 (S.D.N.Y. June 10, 2014).

> Unlike the INA, . . . a particular state offense need not proscribe
> conduct punishable as a felony under the [Controlled Substances
> Act or "CSA"] to constitute a "controlled substance offense" under
> the sentencing guidelines. *See* U.S.S.G. § 4B1.2, cmt. n. 1; *see
> generally United States v. Newhouse*, —— F.Supp.2d ——, 2013
> WL 346432, at *11–13 (N.D. Iowa Jan.30, 2013) (providing
> overview of the career offender guidelines); Amy Baron–Evans et.
> al., *Deconstructing the Career Offender Guideline*, *2 Charlotte
> L.Rev*. 39, 53–56 (2010) (same).

*Dumas v. United States*, No. 06-20402, 2013 WL 1914329, at *4 (E.D. Mich. May 8, 2013). "Thus reference to the CSA — including the provisions of § 841(b) — is not required under the guidelines when the predicate offense is a state conviction." *Id.* (citing *United States v. Pruitt,* 545 F.3d 416, 423 (6th Cir. 2008)). "Unlike the INA, the career-offender provisions do not require that a predicate drug offense qualify as a federal felony." *Beard v. Wilson*, No. 13-CV-3613 (PJS/FLN), 2015 WL 627880, at *2 (D. Minn. Feb. 10, 2015).

Moreover, Petitioner has not established a violation of the Supreme Court's holding in *Descamps*. *Descamps* involved the application of the Armed Career Criminal Act, 18 U.S.C. §

924(e) ("ACCA"),[3] which serves to increase the sentences of certain federal defendants who have three prior convictions "for a violent felony," including "burglary, arson, or extortion."  The Supreme Court in *Descamps* addressed the proper procedure to be followed when a federal court considers whether a defendant's prior conviction qualifies as "a violent felony" under the ACCA.

> To determine whether a past conviction is for one of those crimes, courts use what has become known as the "categorical approach": They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime — *i.e.,* the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.

---

[3] 18 U.S.C. § 924(e) provides:

(e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

(2) As used in this subsection—

(A) the term "serious drug offense" means—

(i)       an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

(ii)      an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i)       has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)      is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

(C) the term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

> We have previously approved a variant of this method — labeled (not very inventively) the "modified categorical approach" — when a prior conviction is for violating a so-called "divisible statute." That kind of statute sets out one or more elements of the offense in the alternative — for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.
>
> This case presents the question whether sentencing courts may also consult those additional documents when a defendant was convicted under an "indivisible" statute — *i.e.,* one not containing alternative elements — that criminalizes a broader swath of conduct than the relevant generic offense. That would enable a court to decide, based on information about a case's underlying facts, that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy our categorical test. Because that result would contravene our prior decisions and the principles underlying them, we hold that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.

*Id.* at 2281-82.[4]

This Court sentenced Petitioner as a career offender under the Sentencing Guidelines based on his two prior state court convictions for attempted delivery/manufacture of cocaine, and not under the ACCA based on prior violent felony convictions. Even assuming that *Descamps* applies to the facts presented in this case,[5] the record fails to establish a violation of the holding

---

[4] *Descamps* has not been applied retroactively to cases on collateral review. *See Hoskins v. Coakley*, 2014 WL 245095, at *5; *United States v. Patrick*, Nos. 6:06-034-DCR, 6:14-7357-DCR, 2014 WL 2991857, at *2 (E.D. Ky. July 2, 2014)(and cases cited therein). However, *Descamps* was decided on June 20, 2013*, i.e.,* prior to the Sixth Circuit's May 5, 2014, order remanding the case to this Court with instructions to reinstate the original sentence.

[5] Other courts have concluded that *Descamps* does not apply to the facts presented in this matter. *See, e.g., United States v. Jones*, No. 6:04cr70047-1, 2015 WL 1729785, at *2 (W.D. Va. April 15, 2015)(*Descamps* does not apply

in *Descamps,* which permits a modified categorical approach to be used where the statute at issue sets forth alternative elements upon which a conviction can be based. *See United States v. Colon*, No. 09-0155, 2015 WL 127726, at *5 (E.D. Pa. Jan. 6, 2015). Petitioner does not allege, and the record does not reflect, that the Court improperly employed a modified categorical approach.

> In order to determine whether a defendant's prior conviction is a "controlled substance offense" for purposes of § 4B1.1, the Sixth Circuit has adopted a "categorical" approach. *See United States v. Martin,* 378 F.3d 578, 581 (6th Cir.2004) (employing a categorical approach to determine whether a particular offense constituted a "crime of violence" under the Guidelines); *United States v. Butler*, 207 F.3d 839, 842-43 (6th Cir.2000) (employing a categorical approach to determine whether a particular offense constituted a "controlled substance offense" or "crime of violence" under the Guidelines). Generally speaking, only the fact of the prior conviction and the statutory definition of the predicate offense are used to determine whether a prior conviction is a controlled substance offense. *Butler,* 207 F.3d at 843; *see Martin,* 378 F.3d at 581. "Under this approach, it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct. . . . Indeed, the categorical approach eliminates the practical difficulties and potential unfairness of a factual approach to each prior conviction." *Butler,* 207 F.3d at 843 (internal quotations and citations omitted). If, however, "the relevant statute of conviction does not supply a clear answer to [whether the defendant committed a controlled substance offense] the sentencing court may consult the indictment and either the jury instructions or plea agreement for the specific conduct with which the defendant was charged in order appropriately to characterize the offense." *Martin*, 378 F.3d at 581.

*United States v. Galloway*, 439 F.3d 320, 322-23 (6th Cir. 2006). *See also United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006)("If. . . the categorical approach fails to be determinative, a sentencing court may look to the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the

---

where the petitioner is sentenced as a career offender under the United States Sentencing Guidelines, and not the ACCA); *Pittman,* 2014 WL 3735918, at *4 (same).

defendant assented,' . . .  in order to determine whether the prior crime qualifies as a controlled substance offense.")(citing *Shepard*, 125 S.Ct. at 1257; *Galloway*, 439 F.3d at 323).  *See United States v. Solomon*, 592 Fed.Appx. 359 (6th Cir. Nov. 14, 2014)(applying "modified categorical approach" to conclude that the petitioner's prior state marijuana conviction qualified as a predicate offense for his classification as a career offender).

Petitioner was sentenced as a career offender under U.S.S.G. § 4B1.1, which provides in relevant part:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

> (b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

"Controlled substance offense" is defined as a state or federal offense, "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b).  An attempt to commit a controlled substance offense also falls within this category.  *See United States v. Solomon*, 592 Fed.Appx. at 359 (attempted possession of marijuana with intent to deliver constitutes qualifying prior conviction within meaning of § 4B1.2(b)).

Petitioner does not dispute that he was at least eighteen years old at the time of the commission of the prior offenses at issue or that the offenses of conviction carried a penalty of a term of imprisonment exceeding one year.  He does not dispute that his two prior state convictions were for the attempted delivery/manufacture of cocaine.  They therefore plainly qualify as "controlled substance offenses," establishing Petitioner's status as a career offender, and the Court had no need to consult any other documents to make this determination. *See McClaim v. United States,* Nos. 4:13-cv-02394-RBH; 4:12-cr-00058-RBH-1, 2014 WL 6666595, at \*3 (D. South Carolina Nov. 24, 2014)(where crime squarely falls within the definition of "controlled substance offense" of U.S.S.G. § 4B1.2(b), prior conviction properly counted as predicate controlled substance conviction for sentencing purposes); *see also Colon*, 2015 WL 127726, at \*5 (same).  Moreover, nothing in the record supports Petitioner's allegation that application of a modified categorical approach would have established that his prior convictions did not constitute controlled substance offenses within the ambit of U.S.S.G. § 4B1.2.  To the contrary, the *Pre-sentence Investigation Report* indicates that, in July 2002, Petitioner was arrested after police observed him making a narcotics transaction, and found 2.2 grams of cocaine and 1.2 grams of marijuana on his person.  In July 2003, when responding to the call of a woman being stabbed, police observed Petitioner throw into a vacant lot a package found to contain twelve small bags of crack cocaine.  *Pre-sentence Investigation Report* §§ 56, 57.

Under all these circumstances, the Court concludes that claim two is without merit.

## Disposition

Therefore, the *Motion to Vacate under 28 U.S.C. 2255* (ECF No. 115) is **DISMISSED.**

Petitioner's request for an evidentiary hearing is **DENIED**.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT.**


<u>**/s/  GREGORY L. FROST**</u>
GREGORY L. FROST
United States District Judge